UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HUGO HARMATZ,

      Plaintiff,

v.                                             Case No.:  2:25-cv-342-SPC-DNF

COUNTY OF CHARLOTTE,
FLORIDA et al.,

      Defendants.

_____

## OPINION AND ORDER

Before the Court are four motions: (1) Defendants County of Charlotte Animal Control ("Charlotte County Animal Control") and Officer Brynn Ackerman's Motion to Dismiss (Doc. 23); (2) Defendant Brianna Carlo, DVM's Motion to Dismiss the Amended Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Doc. 24); (3) Defendants Englewood Animal Health Center, Southern Veterinary Partners, Michael Herrington, DVM, and Charlotte Animal Hospital's Motion to Quash Service of Process and Motion to Dismiss the Amended Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Doc. 25); and (4) Defendants Charlotte County Board of County Commissioners ("Charlotte County"), Glinda Pruitt, Janette Knowlton, and Brian Jones' Motion to Dismiss and Motion to Quash Service (Doc. 58).  Plaintiff Hugo Harmatz, proceeding pro se,

responded to the first three motions (Docs. 54, 55) but failed to respond to the fourth. For the reasons below, the Court grants Defendants' motions.

## Background[1]

This case concerns the treatment of Plaintiff's dog. Sometime in 2024, Plaintiff brought his dog to Michael Herrington, DVM at Englewood Animal Health Center to treat an unknown "defecation issue." (Doc. 21 ¶ 21). Dr. Herrington prescribed clindamycin, but the dog's condition reappeared, so Plaintiff returned to Dr. Herrington, who prescribed clindamycin again. After a third round failed, Dr. Herrington suggested the dog needed surgery to identify the issue. Plaintiff made multiple attempts to contact Dr. Herrington outside these visits, to no avail.

In January 2025, Plaintiff obtained a second opinion from Brianna Carlo, DVM at Charlotte Animal Hospital. Dr. Carlo diagnosed Plaintiff's dog with a likely perianal fistula, a common condition in the dog's breed. Dr. Carlo's assistant informed Plaintiff that surgery could be performed to make the dog "perfect." (*Id.* ¶ 31). Dr. Carlo estimated the surgery would cost $1,700, with an additional $600 per month in medication for the rest of the dog's life. She also warned of the risks of surgery and that the dog might have cancer.

---

[1] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Plaintiff. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009). At the same time, "legal conclusions without adequate factual support are entitled to no assumption of truth[.]" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (cleaned up).

After obtaining a second opinion, Plaintiff returned to Dr. Herrington, who advised that a biopsy was necessary to determine whether the dog had cancer or another medical condition. Dr. Herrington estimated the biopsy would cost between $863.74 and $1,200.73. Plaintiff did not proceed with the biopsy but contacted "other professionals," who all supported Dr. Carlo's assessment of a perianal fistula. (*Id.* ¶ 33). Plaintiff also found research showing that dogs with perianal fistulas can be treated "with cyclosporin rather than clindamycin." (*Id.* ¶ 34).

A few days after Plaintiff took his dog to Dr. Carlo, Charlotte Animal Control Officer Brynn Ackerman visited Plaintiff's residence in response to a negligence complaint filed by Dr. Carlo. Officer Ackerman examined the dog, spoke briefly with Plaintiff, and advised that the file was closed. Officer Ackerman also told Plaintiff that Charlotte Animal Hospital had made several false reports in the past.

Several days later, Officer Ackerman returned to Plaintiff's residence and looked through a window. Plaintiff saw her from inside his home and went outside. Officer Ackerman told Plaintiff that her boss, Charlotte County Animal Control Division Manager Brian Jones, had instructed her to issue an "Order to Provide Care" for the dog. (Doc. 21 ¶ 37). To comply with the order, Plaintiff again took the dog to Dr. Herrington.

Officer Ackerman made a third visit to Plaintiff's residence. She again approached the windows and looked inside. Plaintiff alleges that Officer Ackerman warned him in a raised voice that he "better be at the appointment with [Dr.] Herrington tomorrow" or be arrested and prosecuted. (*Id*. ¶ 39). Plaintiff tried to explain and provide the correct date for the appointment, but Officer Ackerman said she "was going straight to the State's Attorney to have" Plaintiff arrested and prosecuted. (*Id*.). He asked Officer Ackerman not to return, but she advised that she could "come by" Plaintiff's residence at any time. (*Id*. ¶ 40).

Plaintiff attempted to report Officer Ackerman to her superiors. He tried to contact Division Manager Jones about Officer Ackerman to no avail. Plaintiff contacted the Charlotte County Attorney's Office and spoke with Assistant County Attorney Glinda Pruitt. On February 14, 2025, Plaintiff asked Attorney Pruitt to direct Officer Ackerman not to return to his residence because he had "health issues" from the "harassment." (*Id*. ¶¶ 42–43). Plaintiff threatened legal action if further visits occurred. That same day, Plaintiff's dog "was seen" by an unspecified person, and it "was evidenced that the dog was not neglected in any manner." (*Id*. ¶ 46). On May 12, 2025, Plaintiff alleges the Charlotte County Attorney's Office contacted him again, causing him "to experience additional and mounting damages." (*Id*. ¶ 45).

Plaintiff brings nine causes of action against Defendants: invasion of privacy and violation of Plaintiffs constitutional rights (Count I), trespass (Count II), invasion of privacy – medical records (Count III), harassment (Count IV), intentional infliction of emotional distress ("IIED") (Count V), failure to train (Count VI), failure to supervise (Count VII), malpractice (Count VIII), and intentional infliction of emotional distress for impersonating a law enforcement official (Count IX).

Defendants, including local government officials, local government entities, two veterinarians, two animal hospitals, and their owner, move to dismiss all counts. The Court will first address federal subject matter jurisdiction. Second, the Court addresses Plaintiff's claims against Charlotte County and its associated officials. Third, the Court analyzes Plaintiff's pleading deficiencies. Finally, the Court addresses Defendants Englewood Animal Health Center, Charlotte Animal Hospital, Southern Veterinary Hospital, and Michael Herrington, DVM's motion to quash for insufficient service of process.

## Legal Standard

"The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005). Challenges to subject matter jurisdiction, which are governed by Federal Rule of Civil Procedure 12(b)(1),

5

"come in two forms: facial or factual attack." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021) (citation omitted).  A "facial attack" challenges whether a plaintiff "has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."  *Id.* (internal citations omitted).  A "factual attack," by contrast, challenges the existence of subject matter jurisdiction irrespective of the pleadings, and extrinsic evidence may be considered.[2]  *Id.*

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint when a plaintiff does not plead facts that make the claim facially plausible.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009).  This standard requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).  Indeed, "[m]ere 'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do,' and a plaintiff cannot rely on 'naked assertions devoid of further factual enhancement.'"  *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

---

[2] Defendants make both facial and factual attacks on jurisdiction in their briefs.  (Doc. 25 at 5, 11–14).

# Analysis

## I.  Subject Matter Jurisdiction

The Court begins with the threshold requirement of subject matter jurisdiction.  Plaintiff invokes federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332 to establish subject matter jurisdiction.  Neither basis is properly pled.

First, federal question jurisdiction.  Federal subject matter jurisdiction exists for claims arising under federal law.  *See* 28 U.S.C. § 1331.  Federal question jurisdiction exists only when a federal question is presented on the face of the complaint.  *See Dunlap v. G&L Holding Group, Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004).  Plaintiff cites 42 U.S.C. § 1983 as a basis for jurisdiction but fails to identify which constitutional rights Defendants violated.  That is insufficient.

The Amended Complaint asserts that the Court has jurisdiction under Section 1983 and that "there are a number of federal questions to be addressed in this litigation, including civil and constitutional rights."  (Doc. 21 ¶17).  That is not enough.  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred . . . [so] the first step in any such claim is to identify the specific constitutional right allegedly infringed.'"  *Moody v. Miami-Dade Cnty.*, No. 19-24638-CV, 2020 WL 13614261, at *2 (S.D. Fla. May 5, 2020) (quoting *Albright v. Oliver*,

510 U.S. 266, 271 (1994)). Because Plaintiff fails to identify which constitutional rights are at issue, he does not state a valid Section 1983 claim. *See Cassidy v. Citrus Cnty. Mosquito Control Dist.*, No. 5:25-CV-00043-WFJ-PRL, 2025 WL 1068831, at *4 (M.D. Fla. Apr. 8, 2025) (dismissing pro se plaintiff's Section 1983 claim for failure to plead a specific constitutional right). Without a federal claim, Plaintiff does not establish federal question jurisdiction.

Absent federal question jurisdiction, Plaintiff must show diversity jurisdiction to avoid dismissal under Rule 12(b)(1). He does not. To invoke diversity jurisdiction, a plaintiff must allege that the amount in controversy exceeds $75,000 and that the dispute is between citizens of different states. *See* 28 U.S.C. § 1332(a)(1). Diversity jurisdiction requires complete diversity, which exists where "no plaintiff is a citizen of the same state as any defendant." *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1268 (11th Cir. 2013). An individual's citizenship is based on his domicile, meaning his state of residence in which he intends to remain. *See McCormick v. Aderholt*, 293 F.3d 1254, 1257–58 (11th Cir. 2002). Corporations are citizens of the state where they are incorporated as well as the state where their principal place of business is located.[3] 28 U.S.C. § 1332(c).

---

[3] Plaintiff alleges that Defendant Southern Veterinary Partners "is the owner of over four hundred veterinary partnerships in the United States." (Doc. 21 ¶ 10). To the extent any of

Plaintiff fails to establish diversity jurisdiction. Plaintiff states that "the amount in controversy exceeds $75,000 (USD), not counting costs of litigation and court costs." (Doc. 21 ¶ 18). But the amount in controversy is only half the equation. The Amended Complaint fails to plead the Defendants' citizenship, which is required for diversity of citizenship. *See Kantrow v. Celebrity Cruises Inc.*, 533 F. Supp. 3d 1203, 1214–15 (S.D. Fla. 2021) (noting "citizenship should be distinctly and affirmatively alleged") (internal quotation omitted). Plaintiff alleges several Defendants are "located" in Florida. (Doc. 21 ¶¶ 2, 3, 6, 9, 12). For others, he alleges their employer, rather than the state of their citizenship. (*Id.* ¶¶ 5, 7–8, 11, 13). For Defendant Brian Jones, Plaintiff only provides his occupation. (*Id.* ¶ 4). Plaintiff also fails to establish his own citizenship, alleging only that he "resides in Charlotte County, Florida." (*Id.* ¶ 1). This is insufficient because "[r]esidence alone is not enough" to allege an individual's citizenship. *Travaglio*, 735 F.3d at 1269. "[D]omicile requires both residence in a state and an intention to remain there indefinitely[.]" *Id.* (quotation marks omitted). In sum, Plaintiff's allegations do not establish diversity of citizenship.[4] Because Plaintiff fails to establish

---

the Defendants are organized as partnerships rather than corporations, they are citizens of every state in which one of their partners are citizens. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1021 (11th Cir. 2004).

[4] Plaintiff argues that if Dr. Carlo's citizenship is insufficiently pled, discovery is needed to provide such information. (Doc. 53 at 5). Plaintiff's argument is wrong because he "is foreclosed from pursuing jurisdictional discovery in an attempt to marshal facts that he 'should have had—but did not—before coming through the courthouse doors.'" *Thompson v.*

diversity jurisdiction, the Amended Complaint is dismissed without prejudice under Rule 12(b)(1).

## II.    Claims Against Charlotte County Defendants

The Court now addresses issues regarding Plaintiff's claims against Charlotte County and its officials.

### A. Proper Parties

First, the Court addresses whether Plaintiff has sued the proper parties. Plaintiff sues Charlotte County, Charlotte County Animal Control, and the Charlotte County Attorney's Office, as well as Defendants Jones, Officer Ackerman, Pruitt, and Knowlton in their official capacities.    Charlotte County Animal Control and the Charlotte County Attorney's Office are improper parties because they are "merely . . .  vehicles through which the county governs and are not proper party defendants." *Eubanks v. Glynn Cnty. Det. Ctr.*, No. CIV. A. CV207-132, 2008 WL 114884, at *1 (S.D. Ga. Jan. 8, 2008) (citation omitted); *see also Lewis v. Marion Cnty. Sheriff's Dep't*, No. 5:15-CV-275-OC-28PRL, 2015 WL 9873805, at *2 (M.D. Fla. Dec. 28, 2015), *report and recommendation adopted*, 2016 WL 234847 (Jan. 19, 2016) (dismissing claims

---

*Carnival Corp.*, 174 F. Supp. 3d 1327, 1339 (S.D. Fla. 2016) (quoting *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1216 (11th Cir. 2007)).  It is Plaintiff's responsibility to ascertain Defendants' citizenship before bringing suit.  Suing first and establishing jurisdiction later is not permissible.

against county offices because they were not proper parties to the suit).  So they are dismissed from this case with prejudice.

Similarly, the claims against Defendants Jones, Officer Ackerman, Pruitt, and Knowlton in their official capacities are improper because they are duplicative of the claims against Charlotte County.[5]  *See Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985) (noting "an official-capacity suit is . . . to be treated as a suit against the entity").  So the official capacity claims are dismissed as duplicative of the claims against Charlotte County.  *See, e.g.*, *Pinto v. Collier Cnty.*, No. 2:19-CV-551-FTM-60MRM, 2020 WL 2219185, at *3 (M.D. Fla. May 7, 2020) (dismissing official capacity claims against county officials as duplicative of claims against Collier County).

B. <u>*Monell* Liability</u>

As to the proper party of Charlotte County, the Court addresses what it construes as Section 1983 claims (Counts I, IV, and V).  The Court begins with Count I.  Congress, in enacting Section 1983, provided a statutory vehicle for suing municipalities (and, as relevant here, counties) for violating an individual's constitutional rights.  *See Monell v. Dep't of Social Services of City*

---

[5] The Court does not address the claims against the Charlotte County officials in their individual capacities, given the numerous pleading deficiencies.  That said, the Court is aware of the arguments regarding qualified immunity and will address them if necessary at a later juncture.

*of New York*, 436 U.S. 658, 690 (1978).  But county liability under Section 1983 arises "only under limited factual circumstances."  *Freeman v. Jupiter Inlet Colony*, 778 F. Supp. 3d 1326, 1340 (S.D. Fla. 2025) (citing *Monell*, 436 U.S. at 690); *see also Simmons v. Bradshaw*, 879 F.3d 1157, 1169 (11th Cir. 2018) ("[T]he bar to establish municipal liability is very high.") (citation omitted).

> A plaintiff can establish municipal liability under *Monell* in three ways: (1) identifying an official policy[6]; (2) identifying an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights.

*Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 48 F.4th 1222, 1229 (11th Cir. 2022) (citation omitted).  Under *Monell*, alleging that one or even multiple government officials violated an individual's constitutional rights is not enough to hold the governing municipality liable for their actions.  *See Monell*, 436 U.S. at 692, 694.

Plaintiff fails to plausibly assert any of the three theories of liability against Charlotte County.  He does not allege an official policy of Charlotte County that violates constitutional rights, nor does he allege an unofficial policy exists.  Although Plaintiff sues County employees, he neither identifies one with final policymaking authority nor alleges a decision that violated his

---

[6] An official municipal policy is a "statute, ordinance, regulation or decision officially adopted and promulgated by [a local governing] body's officers." *Monell*, 436 U.S. at 690.

constitutional rights. So there is no basis for liability under Section 1983 pursuant to *Monell*. Count I is dismissed without prejudice.

The failure-to-train and failure-to-supervise claims against Charlotte County (Counts VI & VII), which the Court treats as separate Section 1983 claims, fail for similar reasons.[7] "A municipality's culpability for a deprivation of rights [under Section 1983] is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A municipality or county may be held liable only for a failure to train its employees when "deliberate indifference" to a citizen's rights is shown. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). Deliberate indifference is shown "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," but "the policymakers [nevertheless] choose to retain that program." *Connick*, 563 U.S. at 61. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate . . . [a] failure to train." *Id.* at 62 (internal quotation omitted).

Plaintiff fails to plead a failure-to-train or failure-to-supervise claim. Plaintiff does not identify a specific omission in the training for Animal Control

---

[7] "Failure-to-train and failure-to-supervise are separate claims" from each other. *Massey v. Dorning*, 611 F. Supp. 3d 1301, 1323 (N.D. Ala. 2020) (citing *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998)). That said, the standard for liability is the same for both claims. *See Dubose v. City of Hueytown*, 2016 WL 3854241, at *6 (N.D. Ala. 2016). So the Court analyzes the claims together.

officers that causes them to violate constitutional rights. Nor does he allege a pattern of similar violations by Charlotte County Animal Control officers. Plaintiff also fails to allege that Charlotte County policymakers are on notice of an omission in Animal Control officers' training and retained the policy. Therefore, Counts VI and VII are dismissed without prejudice.

C. <u>Sovereign Immunity</u>

That leaves the state law tort claims asserted against Charlotte County (Counts II–V). Charlotte County argues that these claims should be dismissed because Plaintiff failed to provide pre-suit notice. The Court agrees. Generally, "[s]overeign immunity is the privilege of the sovereign not to be sued without its consent." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). "Under Florida law, counties are political subdivisions entitled to sovereign immunity to the same extent as the state." *Calderone v. Scott*, No. 2:14-CV-519-FTM-29CM, 2015 WL 1800315, at *1 (M.D. Fla. Apr. 16, 2015) (citing Fla. Stat. § 768.28(2)).

Florida's legislature explicitly waives sovereign immunity for tort liability. *See* Fla. Stat. § 768.28(5)(a). That said, for an action against a county to proceed, certain conditions must be met. Within three years of the date the claim accrues, the plaintiff must provide written notice of the claim to a state agency or subdivision before filing suit. *See Turner v. Homestead Police Dep't*, 828 F. App'x 541, 545–46 (11th Cir. 2020) (citing Fla. Stat. § 768.28(6)). This

is not optional for plaintiffs; it is a "condition precedent" to bringing suit against the state. *La Riviere v. S. Broward Hosp. Dist.*, 889 So. 2d. 972, 973 (Fla. Dist. Ct. App. 2004); *Maynard v. State, Dep't of Corr.*, 864 So. 2d 1232, 1234 (Fla. Dist. Ct. App. 2004) (noting the notice requirement of § 768.28(6) is "strictly construed, with strict compliance being required") (citations omitted).

Plaintiff fails to satisfy the pre-suit notice requirement. Plaintiff alleges he "formally advised" Pruitt (a lawyer for Charlotte County) that he would institute legal action "if her clients did not cease and desist." (Doc. 21 ¶ 43). Two problems. First, it is unclear whether the communication was in writing, as required by § 768.28(6)(a). Second, Plaintiff's purported notice does not specify that he intended to sue Charlotte County. Therefore, Charlotte County was not "reasonably" on notice of the claim against it. *Turner*, 828 F. App'x at 545. Charlotte County's sovereign immunity has not been waived, and the tort claims (Counts II–V) cannot be brought against it until the statutory conditions are met.

## III. Failure to State a Claim

The Court now addresses the pleading deficiencies in each claim.

### A. Invasion of Privacy/Violation of Constitutional Rights (Count I)

In Count I, Plaintiff alleges invasion of privacy and a violation of his constitutional rights. As discussed above, Count I fails to identify which constitutional right(s) Defendants violated. Count I is also a shotgun pleading

because Plaintiff alleges both a constitutional violation and invasion of privacy in the same count.[8]  *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322–23 (11th Cir. 2015) (complaints that do not separate each cause of action or claim for relief into separate counts are shotgun pleadings).

Additionally, Count I fails to state a claim for invasion of privacy. Florida recognizes three categories of privacy torts:

> (1) appropriation—the unauthorized use of a person's name or likeness to obtain some benefit; (2) intrusion—physically or electronically intruding into one's private quarters; [and] (3) public disclosure of private facts—the dissemination of truthful private information which a reasonable person would find objectionable."

*Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303 (M.D. Fla. 2010), *aff'd*, 627 F.3d 833 (11th Cir. 2010) (quoting *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003)).  Plaintiff does not specify which theory he proceeds under, but the relevant theories here are intrusion and public disclosure of private facts. The Court analyzes those two in turn.

First, intrusion.  Intrusion has three elements: (1) a private quarter, (2) into which a physical or electronic intrusion occurs, and (3) that is highly offensive to a reasonable person.  *See Stasiak v. Kingswood Co-op, Inc.*, No.

---

[8] While Plaintiff identifies specific Defendants in each count, he is on notice that, given the number of Defendants, he must specifically allege which Defendants took which actions.  *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (dismissing as a shotgun pleading a complaint where "geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of").

8:11-CV-1828-VMC-MAP, 2012 WL 527537, at *2 (M.D. Fla. Feb. 17, 2012) (citations omitted). The standard for offensiveness is objective and "onerous," and it is a question of law for the Court. *See Watts v. City of Hollywood*, 146 F. Supp. 3d 1254, 1268 (S.D. Fla. 2015). This standard is met only when the alleged intrusion is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* (quoting *Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1062 (Fla. Dist. Ct. App. 1991)). Plaintiff fails to state a claim for intrusion.

The facts do not objectively establish offensiveness. Officer Ackerman went to Plaintiff's house to check on Plaintiff's dog as part of her duties as an Animal Control officer. Investigating this matter reasonably justified Officer Ackerman's looking through Plaintiff's window. So the Court finds that an Animal Control officer briefly looking through an open window on the outside of a home during a visit is not objectively "so outrageous . . . as to go beyond all possible bounds of decency." *Id.* Plaintiff cites no cases establishing that the facts pled state an intrusion claim. Accordingly, the Court rejects that theory.

Nor does Plaintiff plead invasion of privacy through the public disclosure of private facts. "In order to state a claim for public disclosure of private facts, a plaintiff must show (1) the publication, (2) of private facts, (3) that are offensive, and (4) are not of public concern." *Stirling Int'l Realty, Inc. v.*

17

*Soderstrom*, No. 6:14-CV-1109-ORL-40T, 2015 WL 403318, at *5 (M.D. Fla. Jan. 28, 2015) (quotations omitted).

Plaintiff's invasion of privacy claim fails under this theory as well. Plaintiff alleges only that the Defendants (whom he did not specifically identify) "released" or "shared" his dog's medical records without his approval. (Doc. 21 ¶ 58). He does not allege which Defendants shared his records, to whom they were shared, how they were shared, whether they were shared publicly, or how the content of those records is offensive. So this theory fails as well. Count I is dismissed without prejudice under Rule 12(b)(6).

B. <u>Trespass (Count II)</u>

In Count II, Plaintiff alleges trespass. Plaintiff states, "the defendants have entered and trespassed upon the private property of the plaintiff without legal basis, authority, or foundation." (Doc. 21 ¶ 51). Under Florida law, "[t]respass to real property is an injury to or use of the land of another by one having no right or authority." *Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251, 1254 n.1 (11th Cir. 2006) (quotation omitted).

Plaintiff fails to plead a trespass claim. Officer Ackerman visited Plaintiff's residence to investigate a report from a licensed veterinarian that a dog had been neglected. Officer Ackerman approached Plaintiff's residence and spoke with Plaintiff to perform her duties as an Animal Control Officer. This conduct is permissible under Florida law. *See Rebalko v. City of Coral*

*Springs*, 552 F. Supp. 3d 1285, 1331 (S.D. Fla. Nov. 3, 2020) (quoting *State v. Garcia*, 374 So. 2d 601, 603 (Fla. Dist. Ct. App. 1979)) (noting "[w]hen the lawful performance of his duty requires that an officer enter upon private property to make a general inquiry, such an entry is justifiable"). Plaintiff provides no authority or argument that Officer Ackerman lacked a legitimate reason to approach the front of his residence and speak with him. After Plaintiff requested that Officer Ackerman not return to his residence on the third occasion, she did not; so there is no basis to argue that Officer Ackerman remained on Plaintiff's property against his explicit instructions. Count II is dismissed without prejudice under Rule 12(b)(6).

C. <u>Invasion of Privacy – Medical Records (Count III)</u>

Count III of Plaintiff's Amended Complaint fails for reasons similar to Count I. Count III alleges that "[d]efendants have shared the plaintiff's dog's confidential medical records without the necessity of a subpoena or permission being granted." (Doc. 21 ¶ 58). Construing Plaintiff's allegations liberally, the only viable theory for this claim is public disclosure of private facts. As with Count I, Plaintiff fails to allege that any Defendant published his dog's medical records to the public or that the information in the records is highly offensive to a reasonable person. Count III is dismissed without prejudice under Rule 12(b)(6).

D. <u>Harassment (Count IV)</u>

In Count IV of the Amended Complaint, Plaintiff alleges that all Defendants harassed him "by making knowingly false and fabricated claims" against him.  (Doc. ¶ 60). But there is no common law cause of action for harassment under Florida law, and Plaintiff has failed to identify a cause of action for harassment under any federal or state statute. *See Symphony Dawn v. Nexdine Hosp.*, No. 24-CV-80117, 2024 U.S. Dist. LEXIS 141971, at *12 (S.D. Fla. Aug. 9, 2024) (dismissing claim for harassment under Florida law for failing to plead a valid legal basis).  So Count IV is dismissed without prejudice under Rule 12(b)(6).

    E.  <u>Intentional Infliction of Emotional Distress (Count V)</u>

In Count V, Plaintiff asserts a claim for IIED against all Defendants. Plaintiff alleges that the Defendants knowingly made false claims that he neglected his dog, causing him severe emotional distress.  (Doc. 21 ¶¶ 63–65). This claim fails.

"[T]he elements of [IIED] are (1) intentional or reckless conduct (2) that is outrageous in that it is beyond all bounds of decency and utterly intolerable in a civilized community (3) and that causes the victim emotional distress (4) that is severe." *Corbin v. Prummell*, 655 F. Supp. 3d 1143, 1164–65 (M.D. Fla. 2023) (citation omitted).  Whether the second element of outrageousness is met is a question of law for the Court to decide.  *See Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. Dist. Ct. App. 2007).  "It is not enough

that the intent is tortious or criminal . . . [or] that the defendant intended to inflict emotional distress; and it is not enough if the conduct was characterized by malice or aggravation which would entitle the plaintiff to punitive damages for another tort." *Id.* As to the fourth element, "severe emotional distress means emotional distress of such a substantial quality or enduring quality[ ] that no reasonable person in a civilized society should be expected to endure it." *Kim v. Jung Hyun Chang*, 249 So. 3d 1300, 1305 (Fla. Dist. Ct. App. 2018) (citation omitted).

Plaintiff fails to state an IIED claim. First, he fails to identify any conduct by any Defendant that could be construed as a false accusation that he failed to care for his dog. Officer Ackerman told him that there had been false reports by Charlotte Animal Hospital, but that does not suggest the reports pertained to Plaintiff. Even assuming Defendants made false reports, a false accusation of dog neglect does not meet the "extremely high" bar for outrageousness. *Hendricks v. Rambosk*, No. 2:10-CV-526-FTM-29, 2011 WL 1429646, at *4 (M.D. Fla. Apr. 14, 2011); *see also Williams v. Worldwide Flight SVCS.*, Inc., 877 So. 2d 869, 870 (Fla. Dist. Ct. App. 2004) (finding that repeated false accusations of theft, job termination threats, and racial epithets did not demonstrate outrageousness). Count V is dismissed without prejudice under Rule 12(b)(6).

F. <u>Failure to Train & Failure to Supervise (Counts VI and VII)</u>

Counts VI and VII, as previously noted, fail to state a valid Section 1983 claim against Charlotte County. *See supra* at 13–14. For those reasons, Counts VI and VII fail to state a claim under Rule 12(b)(6) and are dismissed without prejudice.

### G. Malpractice (Count VIII)

Count VIII is a malpractice claim against Dr. Herrington, Dr. Carlo, Englewood Animal Health Center, Southern Veterinary Partners, and Charlotte Animal Hospital. Plaintiff alleges that these Defendants "misdiagnosed, made false reports," and engaged in actions and omissions that "violated the standard of care in the veterinary profession." (Doc. 21 ¶ 64).

To prevail on a professional malpractice claim, Plaintiff must show that Defendants owed him a duty, Defendants breached that duty, and that the breach caused him damages.[9] *See Lieblong v. Peterson & Smith Equine Hosp.*, LLC, No. 5:19-CV-1-OC-30PRL, 2020 WL 10354006, at *5 (M.D. Fla. Nov. 4, 2020) (citation omitted).

Plaintiff fails to allege a breach by Defendants. Plaintiff alleges that Dr. Herrington failed to initially diagnose his dog's condition, prescribed an ineffective medication, and later said a biopsy would be needed to determine the dog's condition. Plaintiff fails to explain how those actions breached the

---

[9] The Court construes Count VIII as a professional malpractice claim rather than a medical malpractice claim.

applicable standard of care.[10]  On that point, neither party provides the Court with information or authority regarding what the standard of care requires in these circumstances.  As to Dr. Carlo, it is unclear what action or inaction Plaintiff points to as the basis for his malpractice claim.  Plaintiff also fails to allege that any Defendant made a false report.  So Plaintiff must allege more. The Court dismisses Count VIII without prejudice under Rule 12(b)(6).

## H. Intentional Infliction of Emotional Distress Impersonating a Law Enforcement Official (Count IX)

Finally, the Court addresses Count IX of Plaintiff's Amended Complaint. Plaintiff brings an IIED claim only against Officer Ackerman, alleging that she "dressed in law enforcement attire, ran her county emergency lights, threatened to arrest the plaintiff, threatened to prosecute the plaintiff, [and] falsely presented herself as a sworn law enforcement officer with arrest powers." (Doc. 21 ¶ 67).  In doing so, she "falsely carried herself as a law enforcement officer" with the power to arrest and prosecute Plaintiff or take his dog away. (*Id.* ¶ 66).

Count IX fails to state a claim.  Plaintiff does not allege facts plausibly showing that Officer Ackerman impersonated a law enforcement official with arrest power.  Plaintiff alleges that Officer Ackerman arrived in a "Charlotte

---

[10] Plaintiff attempts to import new facts in his response regarding essentially all of the Defendants.  This is improper.  *See Alonso Cano v. 245 C & C, LLC*, No. 19-21826-CIV, 2022 WL 4446229, at *17 (S.D. Fla. Aug. 17, 2022) (noting "[a] complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers") (quotation omitted).

County enforcement vehicle" but does not allege that it was a police car. (*Id.* ¶ 35). Plaintiff does not allege that Officer Ackerman identified herself as a police officer, rather than an Animal Control officer. Finally, Officer Ackerman did not attempt to arrest Plaintiff. Officer Ackerman ultimately said she would report Plaintiff to the State's Attorney to "have" Plaintiff arrested, not that she personally could do so. (*Id.* ¶ 39). Count IX fails to state a claim and is dismissed without prejudice under Rule 12(b)(6).

## IV.    Service of Process

The Court turns to one final issue. Defendants Englewood Animal Health Center, Charlotte Animal Hospital, Southern Veterinary Hospital, and Dr. Herrington moved to quash for insufficient service of process. For the reasons below, the Court grants the motion.

Service of process "is a jurisdictional requirement: a court lacks jurisdiction over . . . a defendant when that defendant has not been served." *Pouyeh v. Pub. Health Tr. of Jackson Health Sys.*, 718 F. App'x 786, 790–91 (11th Cir. 2017) (quotation omitted). The Federal Rules provide that "[a]ny person who is at least 18 years old and *not a party* may serve a summons and complaint." Fed. R. Civ. P. 4(c)(2) (emphasis added). Pro se litigants must comply with procedural rules, including those rules governing service. *See Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007).

Defendants argue that service is deficient because Plaintiff served them personally, in violation of Rule 4(c)(2). In support of their motion, Defendants submitted affidavits from employees of Charlotte Animal Hospital and Englewood Animal Health Center. (Docs. 25-1, 25-2). These employees state that Plaintiff personally delivered the complaint and summons to their offices. When a defendant submits affidavits to rebut the validity of service of process, the plaintiff must show by evidence that service was proper. *See Meir ex rel. Meir v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2003). In response, Plaintiff filed a Certification of Hugo Harmatz (Doc. 52) stating that a man named Steve Boues served the Summons and Complaints at Englewood Animal Health Care Center and Charlotte Animal Hospital.

The Court need not decide the issue of service, as the Complaint has been dismissed against these parties for the above reasons. That said, if Plaintiff chooses to pursue this matter, he must ensure proper service is perfected on Defendants Englewood Animal Health Center, Charlotte Animal Hospital, Southern Veterinary Hospital, and Dr. Herrington.

## Conclusion

In sum, Plaintiff's Amended Complaint is a menagerie of errors. Analyzing the mountain of mistakes in Plaintiff's Amended Complaint is "an undue tax on the Court's resources." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018). Even so, the Court will give Plaintiff one final

opportunity to get this case off the ground.  Any further pleading deficiencies will result in dismissal of this action with prejudice.  *See Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 903 (11th Cir. 2020) ("A district court need not allow an amendment where there has been repeated failure to cure deficiencies by amendments previously allowed." (cleaned up)).

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion to Dismiss (Docs. 23, 24, 25, and 58) are **GRANTED**.

2. Plaintiff's Amended Complaint (Doc. 21) is **DISMISSED without prejudice**.

3. The Clerk is **DIRECTED** to terminate Charlotte County Animal Control and Charlotte County Attorney's Office.

4. On or before **February 3, 2026**, Plaintiff may file an amended complaint.  **Failure to do so will cause the Court to dismiss this case without further notice.**

**DONE** and **ORDERED** in Fort Myers, Florida on January 22, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

26